Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel II

| | | |
|---|---|---|
| RICARDO LAUREANO BERMÚDEZ<br>        Recurrente<br><br><br>v.<br><br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br>        Recurrido | KLRA202400204 | *Revisión Judicial* procedente del Departamento de Corrección y Rehabilitación |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

Adames Soto, Juez Ponente

## **SENTENCIA**

En San Juan, Puerto Rico, a 19 de julio de 2024.

Comparece el señor Ricardo Laureano Bermúdez (señor Laureano Bermúdez o recurrente), quien es miembro de la población penal, solicitando que revisemos sendas *Resoluciones* emitidas por la Oficina de Programas de Desvío del Departamento de Corrección y Rehabilitación (DCR), el 15 de marzo de 2024[1]. Ante una petición del señor Laureano Bermúdez dirigida al DCR para beneficiarse del *Programa de Desvío, infra.*, el foro recurrido la denegó, explicando que este no cumplía con los criterios de elegibilidad para beneficiarse de: (1) *Programa Extendido con Monitoreo Electrónico;* (2) *Programas Comunitarios de Base Religiosa y de fe;* y (3) *Programas Comunitarios Seculares.* El DCR concluyó que al momento del recurrente cometer los delitos por los cuales cumple sentencia, los programas aludidos no existían, por lo que no tenía expectativa de beneficiarse de ellos.

_____

[1] Notificadas el 21 de marzo de 2024.

NÚMERO IDENTIFICADOR

SEN2024_____

Por los fundamentos que expondremos a continuación, cabe confirmar la determinación recurrida.

## I. Resumen del tracto procesal

Por hechos cometidos por el señor Laureano Bermúdez el 5 de marzo de 1989, este fue encontrado culpable y posteriormente sentenciado, el 12 de septiembre de 1989, a cumplir noventa y nueve años por los delitos de asesinato en primer grado, tentativa de robo e infracción a la Ley de Armas. Actualmente, el recurrente tiene 53 años y ha cumplido alrededor de 34 años de reclusión.

Respecto a lo que concierne, el 28 de octubre de 2020, el *Comité de Clasificación y Tratamiento* determinó reclasificar el grado de custodia en que se encontraba el señor Laureano Bermúdez, de mediana a mínima. A los pocos años, el 19 de octubre de 2023, el *Comité de Clasificación y Tratamiento* emitió otra *Resolución,* evaluando el *Plan Institucional* del recurrente y sobre este señaló lo siguiente:

> No ha incurrido en querellas ni informes negativos y ha demostrado consistencia en el buen comportamiento. La conducta actual refleja la adaptación del confinado al encarcelamiento y demuestra funcionar bajo medidas de mínima supervisión. Entendemos de [la] evaluación de[l] expediente social y criminal ha ganado madurez y sentido de responsabilidad durante su proceso de rehabilitación. A través de su participación en los programas de tratamiento ha reconocido cuáles son sus responsabilidades como confinado dentro de la Agencia. Demuestra compromiso con continuar con el plan institucional que se le continúe asignando.
> El comité de Clasificación y Tratamiento le recomienda que continúe sin incurrir en Querellas y continúe participando de las actividades o programas de tratamiento que vayan surgiendo durante su sentencia; como lo ha estado haciendo hasta ahora. Le exhortamos a que mantenga los excelentes ajustes institucionales que ha logrado obtener.

No obstante, el 15 de marzo de 2024,[2] la *Coordinadora del Programa de Desvío* del DCR emitió una *Respuesta de la planilla de información necesaria para evaluar candidatos para el programa Pase*

---

[2] Notificada el 21 de marzo de 2024.

*extendido con monitoreo electrónico*, en la que determinó denegar la participación del recurrente en el *Programa de supervisión electrónica*. Al así denegar tal beneficio al señor Laureano Bermúdez la referida funcionaria indicó que este:

> No cumple con criterios de elegibilidad.
>
> La fecha de los hechos de los delitos por los que fue sentenciado, fueron el 5 de marzo de 1989. El Programa de Supervisión Electrónica fue reglamentado por primera vez el 28 de febrero de 1994. (Reglamento #5065).
>
> Por ende, al momento de usted cometer [los] delitos por los que cumple sentencia el Programa de Supervisión Electrónica no había sido creado y usted no tenía expectativa de beneficiarse del Programa.
>
> Conforme a la determinación del Tribunal de Apelaciones para el Primer Circuito de Boston en los casos:
>
> Efraín González Fuentes vs Carlos Molina Rodríguez, Caso Núm. 08-1818 y Carmen Rivera Feliciano vs. Luis Fortuño Burset, Caso Núm. 08-1919[3].

En la misma fecha,[4] el DCR le notificó al señor Laureano Bermúdez sobre la denegatoria a participar en los Programas Religiosos y Seculares. En lo pertinente, el DCR fundamentó su determinación en que al momento del recurrente cometer los delitos por los cuales está sentenciado, los programas de tratamiento no existían, así que no tenía expectativa de beneficiarse de ellos.

Inconforme, el señor Laureano Bermúdez presentó el *recurso de revisión judicial* que está ante nuestra consideración, imputando la comisión del siguiente error:

> Erró el Departamento de Corrección al denegar una concesión del privilegio simplemente basados en la fecha de la comisión de delitos, sin entrar en los méritos de elegibilidad del confinado y su ajuste institucional.

El 16 de mayo de 2024, emitimos una *Resolución* concediéndole un término de treinta días a la parte recurrida para presentar su *Alegato.*

---

[3] Anejo I del recurso de *revisión judicial*.
[4] Notificada el 21 de marzo de 2024.

En efecto, la Oficina del Procurador General, en representación del DCR, compareció ante nosotros mediante *Escrito en cumplimiento de resolución.*

Contando con el beneficio de las comparecencias de las partes, estamos en posición de resolver.

## II. Exposición de Derecho

### A. Revisión Judicial

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.*, dispone sobre el alcance de la revisión judicial de las determinaciones de las agencias. Tanto la referida ley, como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. *T–JAC, Inc. v. Caguas Centrum Limited*, 148 DPR 70, 80 (1999). Al respecto, es norma de derecho claramente establecida que los tribunales apelativos han de conceder gran deferencia y consideraciones a las decisiones de los organismos administrativos en vista de la vasta experiencia y conocimiento especializado[5]. *Graciani Rodríguez v. Garage Isla Verde, LLC,* 202 DPR 117, 126 (2019); *Mun. de San Juan v. Plaza Las Américas*, 169 DPR 310, 323 (2006); *Hernández Álvarez v. Centro Unido*, 168 DPR 592, 615–616 (2006). Por lo tanto, los tribunales deben ser cautelosos al intervenir con las decisiones administrativas. *Metropolitana, S.E. v. A.R.P.E.*, 138 DPR 200, 213 (1995); *Viajes Gallardo v. Clavell*, 131 DPR 275, 289–290 (1992).

---

[5] Los fundamentos aportados en la muy reciente decisión del Tribunal Supremo Federal en *Loper Bright Enterprises et al.,* v. *Raimondo*, 603 U.S. __ (2024), 144 S.Ct. 2444, cuestionan en lo esencial buena parte de la jurisprudencia que dirige el proceso de revisión por los tribunales de las determinaciones administrativas. Sin embargo, juzgamos que la situación fáctica en el caso ante nuestra atención no nos requiere ahondar sobre el asunto.

Es por las razones expuestas que las decisiones de los foros administrativos están investidas de una presunción de regularidad y corrección. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008); *Vélez v. A.R.P.E.*, 167 DPR 684, 693 (2006); *Rivera Concepción v. A.R.P.E.*, 152 DPR 116, 123 (2000). La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales, a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 130 (1998); *A.R.P.E. v. J.A.C.L.*, 124 DPR 858, 864 (1989).

Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo v. Yiyi Motors, Motors*, 161 DPR 69, 76 (2004). Conforme a lo cual, habrá que determinar si la actuación de la agencia fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción. *Mun. De San Juan v. CRIM*, 178 DPR 164, 175 (2010). Por tanto, la revisión judicial de una determinación administrativa se circunscribe a determinar si: (1) el remedio concedido por la agencia fue apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo, y (3) las conclusiones de derecho fueron correctas. Sec. 4.5 de la Ley Núm. 38-2017, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, 3 LPRA sec. 9675; *Torres Rivera v. Policía de PR*, 196 DPR 606, 626-627 (2016).

Por otra parte, nuestro Tribunal Supremo ha identificado circunstancias en que corresponde no observar tal deferencia. En específico, dicho alto foro ha reconocido que la referida deferencia a las determinaciones administrativas cederá cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha

errado en la aplicación de la ley, y (3) ha mediado una actuación irrazonable o ilegal. *Acarón, et al v. D.R.N.A.,* 186 DPR 564, 584 (2012)*; Marina Costa Azul v. Comisión,* 170 DPR 847, 852 (2007).

### B. Programa de Desvío

La Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico dispone que será política pública del Estado reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva, y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social. Art. VI, Sec. 19, Const. ELA, LPRA Tomo 1; *López Borges v. Adm. Corrección,* 185 DPR 603, 619 (2012).

Inicialmente, bajo la Ley Núm. 116 del 22 de julio de 1974, *Ley Orgánica de la Administración de Corrección,* según enmendada, (Ley Núm. 116), que dio lugar a la creación de la *Administración de Corrección,* predecesora del DCR, se delegó en dicha agencia administrar un sistema correccional integrado e implantar enfoques para estructurar formas de tratamiento individualizado y programas de rehabilitación en la comunidad, de conformidad al propósito constitucional citado en el párrafo que precede. Art. 4, 4 LPRA sec. 1111. La misma legislación citada contempló que la agencia pública a cargo del sistema correccional proveyera programas de trabajo, estudio o tratamiento para los confinados, en tanto fueran compatibles con la seguridad pública. Art. 5, 4 LPRA sec. 1112.

Eventualmente, el 21 de noviembre de 2011, se aprobó el *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011,* (Plan 2-2011), a través de la Ley Núm. 182-2009, 3 LPRA Ap. XVIII, derogando expresamente la citada Ley Núm. 116. Bajo el referido *Plan* fue creado el DCR, consolidando en éste la Administración de Corrección y la Administración de Instituciones Juveniles. Art. 4 del Plan 2-2011.

Entre las facultades que le confirió el Plan 2-2011 al DCR se encuentran las de: (1) diseñar y operar un sistema diversificado de instituciones, programas y servicios que viabilice la implantación de un tratamiento individualizado y adecuado para los transgresores y los miembros de la población correccional; y (2) desarrollar métodos de rehabilitación en las comunidades, los cuales podrán incluir entre otros, programas de trabajo, estudio o tratamiento, cuando ello sea compatible con la seguridad pública. 3 LPRA, AP. XVIII, Art. 7.

En específico, el Artículo 16 del Plan 2-2011 dispone que:

> El Secretario establecerá mediante reglamento los objetivos de cada programa de desvío, cómo habrán de operar, los criterios y condiciones para la concesión de dicho privilegio, así como también los criterios, condiciones y procesos que habrá de seguirse para la revocación del privilegio y administrará los programas de desvío donde las personas convictas puedan cumplir parte de su sentencia fuera de la institución correccional. La opinión de la víctima habrá de tomarse en consideración como uno de los criterios para conceder el privilegio de ubicar a un miembro de la población correccional en un programa de desvío. 3 LPRA, Ap. XVIII, Art. 16.

Sin embargo, el mismo artículo indicó qué confinados no serían elegibles para participar en los programas de desvío establecidos por el DCR. En lo concerniente al caso de epígrafe, el Art. 16 del Plan 2-2011 desde un principio estableció que **no** sería elegible: *toda persona convicta por el delito grave de segundo grado o de un delito de mayor severidad.*

Posteriormente, el referido artículo 16 del Plan 2-2011 fue enmendado por la Ley 79-2022, pero el artículo 16 no sufrió cambio respecto a la exclusión de ciertos delitos por los cuales los confinados no podrían beneficiarse del programa de desvío. En específico, en el citado artículo se mantuvo la exclusión de los programas de desvío, en lo pertinente, a: *toda persona convicta por delito grave de primer grado.*

Se ha de tomar en consideración que, a tenor con el Plan 2-2011, se aprobaron los *Reglamento[s] del Programa Integral de Reinserción Comunitaria,* Núm. 8177 de 12 de abril de 2012, Núm. 8559 de 17 de

febrero de 2015, y Núm. 9242 de 11 de diciembre de 2020. Todos los reglamentos aludidos también excluían de participar de los programas de desvío a las personas convictas por delito grave de segundo grado o de un delito de mayor severidad y violaciones a la Ley de Armas. En idéntica manera, el vigente Reglamento Núm. 9488 de 9 de agosto de 2023, (Reglamentó Núm.9488), excluyó de la participación de los programas de desvío a aquellos convictos de delito grave de primer grado, y toda persona convicta por violación a *Ley de Armas de Puerto Rico de 2020,* y sus leyes antecesoras. Reglamento Núm. 9488, Artículo VIII.

## III. Aplicación del Derecho a los hechos

### a.

Sin resultar necesario reproducir los datos ya incluidos en el tracto procesal, aduce el recurrente que incidió el DCR al determinar que no cualificaba para participar en los siguientes: (1) *Programa Extendido con Monitoreo Electrónico;* (2) *Programas Comunitarios de Base Religiosa y de Fe;* y (3) *Programas Comunitarios Seculares.* Según el recurrente, el error del DCR yace en denegar la concesión de los privilegios fundamentándose únicamente en la fecha de la comisión de los delitos, sin analizar los méritos de elegibilidad y su ajuste institucional. El señor Laureano Bermúdez argumenta que ha completado una parte sustancial de su sentencia y que ha exhibido buena conducta, completando los talleres y terapias que brinda el DCR. Asimismo, sostiene que no tiene querellas ni informes disciplinarios y que se encuentra en custodia mínima. A tenor, argumenta que cumple satisfactoriamente con todos los requisitos para beneficiarse de los programas de desvío. Por otro lado, el recurrente arguye que debió ser elegible a los programas conforme a la Ley 79-2022, y que las exclusiones establecidas en el Plan 2-2011, según enmendado, no les aplican a las personas sentenciadas previo a la creación de los programas de desvío.

Respecto a lo aseverado por el recurrente, conviene iniciar por reconocer que es cierto que su expediente refleja que ha exhibido buena conducta, ha hecho serios ajustes, completado talleres y terapias, sin que se observen informes de indisciplina, ni querellas administrativas en su contra, lo que resulta encomiable y marca una ruta importante en su proceso de rehabilitación.

Sin embargo, tales buenos ajustes del confinado, que en modo alguno minimizamos, no resultan suficientes para la concesión del beneficio al que aspira, puesto que el Legislador ha determinado no reconocerlo en casos como los del recurrente. Es por esto que, juzgamos, a pesar de la citación que hace el recurrente en su recurso de revisión judicial de la legislación y reglamentación que gobierna la concesión del beneficio del programa de desvío, lo cierto es que no se detuvo a discutir, y ni siquiera reconoció las excepciones que el Legislador impuso a la concesión de dicho beneficio, y han quedado consistentemente plasmadas en la reglamentación que a tales fines ha sido aprobada. Es decir, el recurrente eludió discutir la expresa exclusión del beneficio de desvío a confinados sentenciados por haber cometido asesinato en primer grado, como es su caso.

Según adelantamos, el recurrente fue sentenciado el 12 de septiembre de 1989 a cumplir una pena de noventa y nueve años de cárcel por los delitos de: asesinato en primer grado, tentativa de robo y Ley de Armas. Para la fecha de los hechos por los cuales resultó convicto, se encontraba vigente la Ley Núm. 116, la cual expresamente establecía que sería inelegible para participar de programas de desvío o tratamiento y rehabilitación aquella persona convicta que estuviera cumpliendo sentencia por delito de asesinato. De esta manera, al momento de ser sentenciado, el recurrente no tenía ninguna expectativa de participar de

los programas de desvío, puesto que estaba excluído al haber sido sentenciado por el delito de asesinato en primer grado.

Además, según trazamos en la exposición de derecho, no hemos encontrado legislación o reglamentación alguna que viabilice la concesión del beneficio al que aspira el recurrente, cuando se trata de un confinado que ha sido sentenciado a cumplir pena por asesinato en primer grado.

Contrario a lo alegado por el recurrente, el derecho vigente expresamente lo excluye de poder beneficiarse de los programas de desvío. Según discutido, el Artículo VIII del Reglamento Núm. 9488 dejó plasmada la exclusión de los programas de desvío a toda persona convicta por delito grave de primer grado. Igualmente, el Artículo 16 del Plan 2-2011, según enmendado, expresamente excluye de los mencionados programas a las personas convictas por delito grave de primer grado.

En consecuencia, aunque las resoluciones administrativas ante nuestra consideración denegaron la concesión de programas de desvío al recurrente basados exclusivamente en que no estaban disponibles al momento de los hechos delictivos por los cuales sentenciaron al recurrente, lo cierto es que la legislación o reglamentación subsiguiente tampoco viabilizó tal concesión en casos como el del recurrente. Es a partir de este hecho que valoramos las actuaciones del DCR como razonable.

**IV. Parte dispositiva**

Por los fundamentos expuestos, se confirman las resoluciones recurridas.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones